Michael E. MARTINEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 250–88.

Court of Criminal Appeals of Texas, En Banc.

June 28, 1989.

David R. Weiner (court appointed on appeal only), San Antonio, for appellant.

Fred G. Rodriguez, Dist. Atty. and Mario Bordini and Edward F. Shaughnessy, III, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BERCHELMANN, Judge.

Upon trial by jury, appellant was found guilty of murder. Tex.Penal Code Ann. § 19.02. The trial court assessed punishment at sixteen years confinement in the Texas Department of Corrections. On direct appeal, appellant raised one point of error challenging the trial court's failure to include in the court's charge an instruction on the law of deadly force in defense of person. The Court of Appeals for the Fourth Supreme Judicial District held that self-defense was not raised by the evidence because appellant, who contended the shooting was an accident, never admitted to the commission of the offense.[1] *Martinez v. State*, 744 S.W.2d 687 (Tex.App.—San Antonio 1988). We granted appellant's petition for discretionary review to examine the Court of Appeals' holding. We will affirm the decision of the Court of Appeals.

A brief recitation of the facts is necessary for the disposition of Appellant's claim. Many of appellant's in-laws gathered at a family residence to socialize on June 15, 1986. Shortly before midnight, appellant arrived and an argument ensued

---

1. Appellant requested and received an instruc-   tion regarding accident.

between appellant and his wife's uncle, Joe Gonzales. Appellant shot Gonzales, but there is conflicting testimony surrounding the events leading up to the fatal shooting.

Sylvia Perez, appellant's mother-in-law, testified that she and Gonzales chatted and drank beer while sitting on the hood of a car parked outside her mother's home. Amelia Gonzales, the mother of Perez and Joe Gonzales, was sitting on the front porch at the time. Perez testified that when appellant arrived, he was shouting obscenities and stating that he prevented another family member's car from being stolen. According to Perez, Gonzales admonished appellant not to bring problems to the house, and invited appellant to leave. In so doing, Gonzales grabbed appellant's shirt and gave appellant a push. Appellant walked away, pulled a gun from his pocket, and shot Gonzales in the back, as Gonzales sat on the hood of the car. Perez further testified that when Gonzales was struck, she jumped off the car and ran over to appellant and attempted to wrest away the gun. Several other shots were fired, but no other bullet hit Gonzales.

Amelia Gonzales, the grandmother of appellant's wife, also testified. Her testimony coincided in all relevant respects with the version of events as described by Sylvia Perez.

Debra Martinez, appellant's wife, testified on behalf of appellant. She stated that she and appellant arrived at her grandmother's house and that an argument developed between appellant and her uncle. According to Martinez, Gonzales jumped off the hood of the car and grabbed appellant's shirt. Appellant pushed Gonzales away, went in front of the car and pulled out a gun. When appellant fired a shot in the air, Sylvia Perez ran over to appellant and struggled for control of the gun. Martinez testified that during the struggle between her mother and her husband, the gun fired several times. The second shot hit Gonzales, who was running away, in the back. Martinez concluded her testimony by admitting that Gonzales never threatened appellant and that she knew of no

reason why appellant felt it necessary to pull out the gun in the first place.

Appellant testified that his mother-in-law caused the death of Gonzales. According to appellant, Gonzales was "ugly drunk" and grabbed appellant's shirt, threatening to kill him. Gonzales purportedly twice stuck appellant. Appellant contended that he was afraid Gonzales might be reaching for a knife which Gonzales sometimes carried; therefore, appellant pulled out a gun and fired a "warning shot" into the air. However, when appellant's mother-in-law grabbed his arm, the gun went off several times and fired the shot which killed Gonzales. Appellant stated on cross-examination that he could not remove his finger from the trigger because Perez's finger was "right on top" of appellant's.

Gonzales was not found carrying a weapon. Additionally, Perez, Amelia Gonzales, and appellant's wife testified that they never knew the deceased to ever carry a knife or weapon of any sort. David Perez, appellant's brother-in-law, testified that appellant often carried a gun, but that Gonzales never carried a weapon. After the shooting, Perez testified, appellant stated that Gonzales "deserved it" and that "it was fun to kill" Gonzales.

Dr. Vincent Di Miao, Bexar County Medical Examiner, testified that Gonzales was shot in the back from a distance of greater that two feet. Dr. Di Miao was unable to more specifically determine the distance from which the gun was fired. The bullet entered the left side of Gonzales's back, approximately an inch below the level of the nipple, and traveled at a steep downward path, ending up lodged in the abdominal wall on the right side of Gonzales's body, nine inches below the entrance wound. Dr. Di Miao concluded that when the deceased was struck, he could have been either sitting on the hood of the car or standing, based upon the angle in which the bullet traveled. A test of Gonzales's blood indicated a blood-alcohol content of .20.

■ The court of appeals concluded that appellant was not entitled to a charge on self-defense because he failed to admit to

the commission of the offense. Specifically, the court relied upon appellant's denial of intent to kill and appellant's statement that his mother-in-law "caused" Gonzales's death as evidence lacking admission to the offense. After thoroughly examining the record, we conclude that appellant did sufficiently admit to the commission of the offense. Appellant admitted to pulling out the gun, firing it into the air, and having his finger on the trigger when the fatal shot was fired. While appellant specifically denied intending to kill Gonzales, this alone does not preclude an instruction on self-defense.

■ In *Sanders v. State,* 632 S.W.2d 346 (Tex.Cr.App.1982), this Court held that where a defendant disclaims intent to kill or injure by alleging accident, he is not prevented from obtaining an instruction on self-defense where it is otherwise appropriate. The rationale for this holding was set forth as follows:

> If [a defendant] was placed in such position by the circumstances as gave him the legal right to defend against an unlawful attack on the part of [another], causing him to have a reasonable expectation or fear of death or serious bodily injury, his right of self-defense could inure regardless of whether the discharge of the pistol was accidental or otherwise.

*Id.,* 632 S.W.2d at 348, citing and quoting *Merritt v. State,* 85 Tex.Crim. 565, 213 S.W. 941, 942 (1919). In accord, *Halliburton v. State,* 528 S.W.2d 216 (Tex.Cr.App. 1975); *Sullivan v. State,* 365 S.W.2d 810 (Tex.Cr.App.1963).

Tex.Penal Code Ann. § 9.32 provides the circumstances under which a person is justified in using deadly force against another:

(1) if he would be justified in using force against the other in Section 9.31 of this code; [2]

(2) if a reasonable person in the actor's situation would not have retreated; and

(3) when and to the degree he reasonably believes the deadly force is immediately necessary:

(A) to protect himself against the other's use or attempted use of unlawful deadly force ...

Where a defensive theory is raised by the evidence, the trial court, upon proper request, must instruct the jury on the defensive theory without regard to whether such evidence was strong or weak, uncontradicted or impeached. *Booth v. State,* 679 S.W.2d 498, 500 (Tex.Cr.App.1984). Integral to a determination of whether the evidence raised self-defense by deadly force, we look to whether the defendant reasonably believed the use of deadly force was immediately necessary and whether the defendant's assessment of the situation reasonably indicated he could have retreated. *Fielder v. State,* 756 S.W.2d 309, 319 (Tex. Cr.App.1988). In the case at bar, we need not address the reasonableness of appellant's contention that he believed the use of deadly force was necessary, for it is clear that a reasonable person in appellant's situation would have retreated.

Sylvia Perez, Amelia Gonzalez and appellant's wife all testified that after Gonzales, the deceased, grabbed appellant's shirt, appellant walked several steps away and began firing. Appellant admitted on cross-examination that he "wasn't even thinking about taking off." Instead, appellant stated, he wanted to get the deceased to "back off, totally back off." Assuming, *arguendo,* appellant reasonably believed the unarmed Gonzales was reaching for a knife, a reasonable person in appellant's situation would have retreated from Gonzales. Appellant, armed with a loaded handgun, had every opportunity to walk away from his drunken in-law, but opted not to do so. Indeed, appellant failed to ascertain whether Gonzales was in fact carrying a knife before appellant started firing the handgun.

---

2. The justification in using force is set forth in § 9.31 Tex.Penal Code Ann. as follows:
   ... a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

The evidence fails to raise the issue of self-defense by deadly force. Tex.Penal Code Ann. § 9.32(2). Accordingly, the trial court correctly omitted the requested instruction on this issue.

The decision of the Court of Appeals is affirmed.

CLINTON, J., dissents because, having found the Court of Appeals erred in the reason for the decision, this Court should remand to that court rather than assume the role of factfinder on the question of "retreat."

TEAGUE and DUNCAN, JJ., dissent.