**Donald Ray KIMBROUGH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–94–00293–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 18, 1995.

Rehearing Overruled Jan. 4, 1996.

Discretionary Review Refused May 1, 1996.

ing the period required for the police to obtain a warrant.

458 U.S. at 262, 102 S.Ct. at 3080.

Brian W. Wice, Houston, for Appellant.

John B. Holmes, Jr., William J. Delmord, 3rd, Randy Ayers, Houston, for Appellee.

Before HUTSON–DUNN, O'CONNOR and WILSON, JJ.

## OPINION

WILSON, Justice.

Appellant, Donald Ray Kimbrough, appeals his conviction for murder. Appellant entered a plea of not guilty. The jury found him guilty, made an affirmative finding of a deadly weapon, and then assessed punishment at 65–years confinement in prison and a $10,000 fine.

In three points of error, appellant argues the trial court committed error by denying his requests for jury instructions on the lesser included offense of negligent homicide and the defensive theories of involuntary conduct and self-defense. We affirm.

### Summary of facts

Appellant was indicted for the murder of the complainant, Darby Jackson. As witnesses, the State called the complainant's aunt, his grandmother, his sister, and the cousin of appellant's wife. The State's witnesses testified appellant got into an argument with relatives of his common-law wife, including the complainant, at the complainant's grandmother's house on February 4, 1993, over the transfer of title to a car.

Appellant's common-law wife at the time was Krissie Edwards. Edwards' aunt, Marcia Ratliffe, testified her niece began arguing with appellant at the home of complainant's grandmother. Ratliffe testified that as the argument grew in intensity and began to involve more family members, appellant pushed his wife, who was pregnant at the time, and pushed the complainant's 69–year-old grandmother, who then passed out. At that point the complainant pushed appellant out of the house. Ratliffe stated appellant swung at the complainant, and the complainant struck appellant on the side of the face as appellant was being pushed outside. Appellant then got in his car and left the scene.

The witnesses for the State testified that approximately 45 minutes later appellant returned to the house and kicked the door open. The complainant was standing near the door. The witnesses testified appellant said to the complainant, "[N]igger, what you want [sic] to do?" Appellant then pulled out a gun and shot the complainant twice. The State's witnesses testified there was no struggle for the gun between the complainant and appellant and neither the complainant nor anyone else at the house other than appellant was armed with any weapon. Appellant then left the house and drove away.

An assistant medical examiner for Harris County, Dr. Vladimir Parungao, also testified. Parungao stated the complainant had been shot once in the abdomen and once in the thigh. He determined the cause of death to be the gunshot to the abdomen. He added that, due to soot in the wound, the abdominal wound indicated the gun was held at very close range, with the barrel touching the skin. He further stated he found nothing to indicate the complainant might have struggled for a gun, such as powder burns or other wounds to the complainant's hands or forearms.

Appellant testified that following the argument over the car title, the complainant threatened him and told him he would kill him. Appellant then left the house and went to his apartment. He said his mother-in-law called him on the phone from the house he had just left, and that while she was speaking the complainant grabbed the phone from her and made unspecified threats to appellant. Appellant testified he could hear his daughter crying in the background on the phone and was concerned she would be mistreated. He stated he told his mother-in-law he was on his way to get his daughter. Appellant testified he returned to the house with a gun but did not enter the house. He added the complainant was already standing in the door.

When describing the incident on direct examination, appellant testified in part:

Q: All right. What happened? Explain to the jury what happened at this point.

A: Well, when I made it up to the door, [the complainant] said, you come back for some more, motherf****r, I said, whatever, Darby, just give me my daughter. He looked down and said oh, you got a gun. I said, give me my daughter. He said, I'm fixing to take that gun from you, nigger. He grabbed me.

Q: He grabbed it like that (indicating)?

A: He went up, he pulled up.

Q: He pulled it to himself here (indicating)?

A: Yes. He pulled it to himself. When went [sic] up towards him and we were jerking and it went off. It went off, he jerked back.

Q: All right. Now, [the complainant] grabbed for the gun to get it away from you?

A: Trying to take it from me, it goes off.

Appellant further stated his intention was not to kill the complainant, but was "hopefully that they will see the gun and just give me my daughter because [appellant's wife] never gave no one [sic] consent that I couldn't take her." He added that after the gun was discharged the first time, he lost his balance and was falling back when the gun went off a second time. When he saw the complainant had been shot, appellant "panicked" and left without his daughter. Appellant turned himself in to the police three days later.

On cross-examination, appellant described the events surrounding the shooting in part:

Q: [The complainant] was already standing in the door?

A: Yes, he was.

Q: Did he have anything in his hand?

A: Not to my knowledge, no.

Q: So he didn't have any kind of a weapon, did he?

A: No.

. . . .

Q: You're telling us that you had the gun down at your side, State's Exhibit No. 23, in your right hand like this (indicating).

A: Kind of sticking out a little, you know, not so, you know, you know, how you hold it still.

. . . .

Q: Okay. You had the gun down like this and he was standing in the door talking to you (indicating)?

A: Yes—No, he was stand—

Q: How is he standing?

A: Kind of closer like this (indicating).

Q: Closer?

A: About like this (indicating). We were on the stairs.

Q: Like down at your—

A: And he grabbed it. He asked me, you come back for some more, I said whatever, he looked at the gun—

Q: Looked down at the gun?

A: That's when he went to grab it.

. . . .

Q: And he pulled it up to his chest?

A: And it went off.

. . . .

Q: When you say it went off, did the gun go off by itself?

A: I guess.

Q: Whose finger was on the trigger?

A: [The complainant's], like this (indicating).

. . . .

Q: Now at that point were you in fear of your life? Did you think [the complainant] was going to kill you?

A: Before or after?

Q: Right then when you had the gun when you walked up to the door.

A: Well, it was so many people rushing me and like I said, when [the complainant] grabbed the gun, if he would have took it from me, I'm pretty sure he would have shot me. [The complainant] wasn't in the right state of mind that day and [a] little while before that he had been having problems.

At the close of testimony, the trial court heard argument concerning the charge. Appellant requested instructions on involuntary manslaughter, criminal negligence, and self-defense. In ruling on appellant's requested instructions, the trial court responded:

The Court: Involuntary manslaughter will be granted. Your request for a charge on criminal neglect [sic] homicide will be denied. And the more I look at self-defense on this charge, the more I'm convinced it's not a proper charge either. The best evidence is the testimony I have heard based on the testimony of [appellant].

[Counsel for appellant]: Your Honor, could we at least put it in on accident? I think that—I think—

[Prosecutor]: No such instruction. If [appellant] did it accidentally, then that means he gets acquitted. If he did it recklessly, it's involuntary, if he did it intentionally, it's murder.

The Court: We need to prepare another charge and take out this self-defense.

[Counsel for appellant]: Your Honor, just for the record we would like the Court to know that we object to self-defense not being a part of the charge.

The Court: The record will so reflect.

(In recess.)

The Court: Other than the objections already stated for the record on the earlier charge, any objections or deletions or additional charges?

[Prosecutor]: None from the State, Judge.

[Counsel for appellant]: No further objections from the defense.

Following his conviction, appellant filed written notice of appeal.

### Negligent Homicide

▉ In his first point of error, appellant contends the trial court committed error in denying his request for an instruction on negligent homicide. Appellant argues the issue was fairly raised by the evidence.

The Court of Criminal Appeals has noted the appropriate test to be applied in determining whether a defendant is entitled to a charge on a lesser included offense is: "[F]irst, the lesser included offense must be included within the proof necessary to establish the offense charged, and second, some evidence must exist in the record *that would permit a jury rationally to find* that if the defendant is guilty, he is guilty only of the lesser offense." *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex.Crim.App.1993).

▉ If evidence from any source raises an issue that a lesser included offense may have been committed and a jury charge on the issue is properly requested, the issue must be submitted to the jury. *Thomas v. State*, 699 S.W.2d 845, 849 (Tex.Crim.App. 1985). The credibility of the evidence and whether it is controverted or conflicts with other evidence is not considered in determining whether such a charge should be given. *Id.*

A person commits criminal homicide if he intentionally, knowingly, recklessly, or with criminal negligence causes the death of an individual. TEX.PENAL CODE ANN. § 19.01(a) (Vernon 1994). A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. TEX.PENAL CODE ANN. § 6.03(d) (Vernon 1994). The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.*

▉ The attendant circumstances from which a defendant's mental state can be inferred must be collectively examined in light of this definition of criminally negligent conduct. *Thomas*, 699 S.W.2d at 850. Every case in which a defendant points a loaded gun at another does not necessarily require a trial court to give a charge on criminal negligence. *Id.* Nor does an allegation of accidental discharge. *Id.*

Appellant asserted he did not know much about guns. However, on direct examination appellant testified the gun he brought with him when he returned to the house, a Tek–9, was not an automatic but instead was a semi-automatic weapon. When questioned by trial counsel, he admitted that such a gun requires the person firing it to continue to pull the trigger. On cross-examination appellant stated he kept the gun in his closet and that the gun was already loaded with rounds in the clip when he took it to the house where the complainant was located. Appellant admitted he kept the gun cocked, with a bullet in the chamber, so he did not have to pull the slide back. As noted above, appellant testified his purpose in bringing the gun with him when he returned to the house was to retrieve his daughter, presumably by displaying the gun as a show of force if necessary. Appellant also claimed he feared that if the

complainant took the gun away from him, he might be shot.

Based on appellant's testimony, we conclude the evidence does not show appellant possessed the requisite mental state for negligent homicide, *i.e.*, that he *ought* to have been aware of a substantial and unjustifiable risk. Instead, the evidence demonstrates appellant comprehended the basics of operating his gun and knew the risk of harm or death involved with guns in general and disregarded it. Appellant's statement that he feared the complainant might shoot him indicates he was evidently aware of the possibility of injury or death in exhibiting a gun he knew was loaded.

We find the evidence in the record would not permit a jury rationally to find appellant guilty only of criminally negligent homicide. Accordingly, we find the trial court did not commit error in denying his request for an instruction on that lesser included offense. We overrule appellant's first point of error.

**Involuntary conduct**

In his second point of error, appellant contends the trial court committed error in denying his request for a jury instruction on the defensive theory of involuntary conduct because such a theory was raised by the evidence.

In order to preserve a complaint for appellate review, a party must present to the trial court a timely request, objection or motion, stating the specific grounds for the ruling desired and obtain a ruling upon the party's request, objection or motion. TEX. R.APP.P. 52(a). A dictated objection to a jury charge is sufficient to preserve alleged error for review *without submission of a requested instruction*. *Reece v. State*, 878 S.W.2d 320, 323 (Tex.App.—Houston [1st Dist.] 1994, no pet.). However, the requested charge must be sufficient to call the trial court's attention to the omission in the charge. *Stone v. State*, 703 S.W.2d 652, 655 (Tex.Crim.App.1986).

As set out above, appellant's trial counsel did not request an instruction on voluntari-

ness, but seemed to ask for an instruction on "accident." Counsel for appellant did not provide the trial court with a written requested charge and did not dictate a requested charge on the issue of voluntariness into the record. Counsel for appellant also made no objection and did not seek a ruling regarding the trial court's decision to omit an instruction on voluntariness. Based on this record, we do not find counsel for appellant's statement regarding "accident" was sufficient to draw the trial court's attention to an omission in the charge, absent an objection to the charge or a dictated or written request for a specific charge.

In addition, we observe that the Penal Code no longer recognizes "accident" as a separate defense requiring an instruction, and a request for such an instruction is not sufficient to preserve error. *Harvey v. State*, 821 S.W.2d 389, 390–91 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd).[1] The Court of Criminal Appeals has noted, "There is no law and defense of accident in the present penal code, and the bench and bar would be well advised to avoid the term 'accident' in connection with offenses defined by the present penal code." *Williams v. State*, 630 S.W.2d 640, 644 (Tex.Crim.App. 1982); *Harvey*, 821 S.W.2d at 391.

We find appellant has not preserved any error for our review concerning the trial court's decision to omit an instruction on "accident" or voluntariness. Therefore, we overrule appellant's second point of error.

**Self-defense**

In his third point of error, appellant contends the trial court committed error in denying his request for a jury instruction on self-defense because the issue was raised by the evidence.

As with instructions on lesser included offenses, it is equally well established that if evidence from any source raises the issue of a defensive theory it must be included in the court's charge. *Hayes v. State*, 728 S.W.2d 804, 809 (Tex.Crim.App.1987); *By-*

---

1. *But see Henderson v. State*, 825 S.W.2d 746, 750 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd) (a request for a charge on "accident" may be defective and still alert the trial court to the need for an instruction).

*num v. State,* 874 S.W.2d 903, 907 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong, weak, unimpeached or contradicted. *Hayes,* 728 S.W.2d at 809; *Bynum,* 874 S.W.2d at 907. The defensive issue may be raised solely by the defendant's testimony. *Pierini v. State,* 804 S.W.2d 258, 260 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd). In determining whether the testimony of a defendant raises an issue of self-defense, the truth or credibility of the defendant's testimony is not at issue. *Rodriquez v. State,* 544 S.W.2d 382, 383 (Tex.Crim.App.1976); *Halbert v. State,* 881 S.W.2d 121, 124 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd).

The Penal Code provides in part that a person commits the offense of murder if he intentionally or knowingly causes the death of another. TEX.PENAL CODE ANN. §§ 19.02(b)(1), (2) (Vernon 1994). Appellant testified he was holding the gun at his side when he approached the house. He stated the complainant saw the gun, grabbed it and pulled it up to his chest when it went off. Although appellant testified he was afraid the complainant would shoot him if the complainant succeeded in taking the gun, appellant stated the complainant's finger was on the trigger when the shot that struck the complainant in the abdomen was fired. This abdominal wound was the cause of death according to the medical examiner's testimony.

 Self-defense is a justification for one's actions and necessarily requires an admission of the conduct at issue. *MacDonald v. State,* 761 S.W.2d 56, 60 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). In addition, if a defensive theory simply negates an element of the offense, it is not necessary for a trial court to charge on that theory. *Sanders v. State,* 707 S.W.2d 78, 81 (Tex.Crim. App.1986); *Bynum v. State,* 874 S.W.2d at 907.

Appellant relies on *Martinez v. State,* 775 S.W.2d 645 (Tex.Crim.App.1989), for the proposition that a defendant is entitled to an instruction on self-defense even if he contends the shooting was unintentional. How-ever, the facts of *Martinez* are distinguishable. Although the defendant in *Martinez* claimed he did not intend to kill the complainant, the court also concluded the defendant sufficiently admitted to the commission of the offense when he admitted to pulling out a gun, firing it into the air and having his finger on the trigger when the fatal shot was fired. 775 S.W.2d at 647. Appellant did not admit to shooting the gun at the complainant, but testified that the complainant's finger was on the trigger when the fatal shot was fired. Further, we do not find a rational jury could have inferred from appellant's testimony that he admitted to firing the gun or had his finger on the trigger when the fatal shot was fired. Appellant's testimony simply denied commission of the offense.

Based on this record, we find appellant's testimony did not constitute an admission to shooting the complainant and did not raise the issue of self-defense. Accordingly, we find the trial court did not commit error in denying appellant's request for an instruction on self-defense. We overrule appellant's third point of error.

Finding no reversible error, we affirm the judgment of the trial court.