**Terry Lee CEASAR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–94–01246–CR, 14–94–01247–CR.**

Court of Appeals of Texas, Houston, (14th Dist.).

Feb. 13, 1997.

Discretionary Review Refused May 21, 1997.

J. Armin Rust, Houston, for appellant.

Ernest Davila, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

AMIDEI, Justice.

## OPINION

This is a consolidated appeal by Terry Lee Ceasar of two convictions by a jury for (1) the murder of Derrick Wilson (Wilson) and, (2) the aggravated assault with a deadly weapon of Michael Watts (Watts). The trial court assessed appellant's punishment at life imprisonment for the murder of Wilson and twenty-five years imprisonment for the aggravated assault of Watts, both convictions enhanced by one prior felony conviction. In three points of error, appellant contends the trial court erred (1) in excluding evidence showing the victim's character for violence, (2) in denying a jury instruction on self-defense and, (3) in overruling his *Batson* objection to the strike of one juror. We affirm.

On November 27, 1993, appellant went to a party at an apartment clubhouse in Houston. Wilson and Watts were providing recorded musical entertainment for the group. Someone painted graffiti on the walls and equipment in the laundry room and Casey Spence, the bouncer for the occasion, told the group to go home and the party was over. Watts and Wilson stopped the music and appellant asked Watts to start the music again. Watts turned the music on again and Wilson came over and stopped the record player. Wilson and appellant yelled at each other and Wilson pulled a small, "silver" gun out from under his shirt and pointed it at appellant. Appellant left the clubhouse and then obtained a "black" gun. Some people tried to take the gun away from appellant and appellant fired a shot in the air and scared the people away. Appellant then fired shots through a clubhouse window and a bullet grazed Watts on his neck. Appellant then re-entered the clubhouse yelling for Wilson. Appellant found Wilson behind the record machine booth and the men started fighting. During the fight, appellant dropped his "black" gun but managed to get Wilson's small "silver" gun and shoot him twice with it. One bullet went through Wilson's wrist and another went into his chest. Wilson died at the scene from a bullet wound to his heart and liver.

In point of error one, appellant claims the trial court erred in excluding evidence showing Wilson's character for violence. Appellant offered a certified copy of a probation order and deferment of adjudication of guilt showing Wilson was placed on six years probation for aggravated sexual assault of a child. The trial court excluded the deferred adjudication finding the "prejudicial effect substantially outweighs the probative value" of the judgment under rule 403, Texas Rules of Criminal Evidence.

The state argues the evidence of Wilson's conduct was properly excluded because the issue of Wilson being the first aggressor in the initial confrontation between appellant and Wilson was not disputed by the state. The state expressly conceded that Wilson was the first aggressor.

Since there was no contested issue as to who was the aggressor, the trial court properly excluded the evidence of Wilson's deferred adjudication since it had no probative value. In *Limon v. State,* 632 S.W.2d 812, 815 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd), this court set out the criterion when the evidence is offered for the purpose of showing the deceased was the aggressor:

> Before any evidence of the deceased's character for violence becomes admissible, however, there must be evidence of some

act of aggression by the deceased which the character [evidence] tends to explain (such as drawing a gun or reaching for a pocket where one is usually carried).

*Id.* at 815.

We conclude that with the facts before us there is no evidence of an act which needs to be explained by reputation. *Id.* The evidence is clear that Wilson drew his gun first and pointed it at appellant; thereafter, appellant went outside, armed himself with a gun, and came back in looking for Wilson. The trial court correctly excluded the evidence offered to show that the deceased was the first aggressor because it was not probative of "who was in fact the aggressor" in the fray. In *Thompson v. State,* 659 S.W.2d 649, 653–54 (Tex.Crim.App.1983), the court of criminal appeals held, in pertinent part:

> Thus, it is the rule that reputation evidence concerning the deceased's violent character or prior specific acts of violence committed by him are admissible in so far as they tend to *explain* the deceased's conduct; because this evidence is probative of "who was in fact the aggressor" in the fray (as opposed to "what the defendant thought"), the defendant need not show his own awareness of it at the time of the offense, but like all evidence, it must be established by admissible evidence at trial.

*Id.* at 654. *See also Diaz v. State,* 722 S.W.2d 482, 486 (Tex.App.—San Antonio 1986), *vacated and remanded on other grounds,* 761 S.W.2d 1 (Tex.Crim.App.1988), *on remand,* 769 S.W.2d 307 (Tex.App.—San Antonio 1989, pet. ref'd). We overrule appellant's point of error one.

■ In point of error two, appellant complains the trial court erred in not granting his requested jury instruction on self-defense. He argues that the evidence raised an issue of self-defense and the trial court had a duty to submit the issue of self-defense to the jury. We disagree.

■ Appellant correctly states the general proposition that a defendant is entitled to an instruction on every defensive issue raised by the evidence. *Hayes v. State,* 728 S.W.2d 804, 807 (Tex.Crim.App.1987). This is true regardless of whether such evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of this evidence. *Id.; Mullins v. State,* 767 S.W.2d 166, 168 (Tex.App.—Houston [1st Dist.] 1988, no pet.). A defendant's testimony alone may be sufficient to raise a defensive theory requiring an instruction in the jury charge. *Dyson v. State,* 672 S.W.2d 460, 463 (Tex.Crim.App.1984); *Pierini v. State,* 804 S.W.2d 258, 260 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd).

Section 9.32, Texas Penal Code, provides, in pertinent part:

> A person is justified in using deadly force against another:
>
> (1) if he would be justified in using force against the other in Section 9.31 of this code;
>
> (2) if a reasonable person in the actor's situation would not have retreated; and
>
> (3) when and to the degree he reasonably believes the deadly force is immediately necessary:
>
>> (A) to protect himself against the other's use or attempted use of unlawful deadly force . . .

In *Martinez v. State,* 775 S.W.2d 645, 647 (Tex.Crim.App.1989), the court of criminal appeals held: "Integral to a determination of whether the evidence raised self-defense by deadly force, we look to whether the defendant reasonably believed the use of deadly force was immediately necessary and whether the defendant's assessment of the situation reasonably indicated he could have retreated. *Fielder v. State,* 756 S.W.2d 309, 319 (Tex.Crim.App.1988)." In *Martinez,* the evidence indicated the appellant and the victim had an altercation which was broken up by some people and appellant walked away and the victim sat on the hood of car. The appellant in *Martinez* then pulled a gun and shot the victim in the back and testified at the trial he was afraid the victim might be reaching for a knife which the victim sometimes carried. The court of criminal appeals in *Martinez* stated: "Assuming, *arguendo,* appellant reasonably believed the unarmed Gonzales was reaching for a knife, a reasonable person in appellant's situation would

have retreated from Gonzales. Appellant, armed with a loaded handgun, had every opportunity to walk away from his drunken in-law, but opted not to do so." *Martinez,* 775 S.W.2d at 647. The *Martinez* court found: "The evidence fails to raise the issue of self-defense by deadly force. Tex. Penal Code Ann. § 9.32(2). Accordingly, the trial court correctly omitted the requested instruction on this issue." *Id.* at 648. In this case, appellant walked out of the clubhouse after the initial altercation with Wilson. Thereafter, he armed himself with a gun, fired a shot in the air, scaring away the people around him, then fired shots through the clubhouse window that wounded Watts. He then walked in the clubhouse yelling for Wilson and proceeded to engage in a fight with Wilson, losing his own gun in the struggle, and shooting Wilson with Wilson's gun. Appellant had ample opportunity to retreat after the initial altercation with Wilson but did not and a reasonable person in appellant's situation would have retreated from Wilson after leaving the clubhouse. We find the evidence failed to raise the issue of self-defense by deadly force. The trial court correctly omitted the requested instruction on self-defense and appellant's point of error two is overruled.

■ In point of error number three, appellant contends the trial prosecutor's peremptory strike of an African–American man from the jury venire panel was motivated by racial considerations in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and article 35.261, Texas Code of Criminal Procedure.

The appellant's claim involves juror Anthony Henderson who was struck by the state because the prosecutor thought the juror would be sympathetic to appellant because he was a consumer advocate, like Ralph Nader, who fights the establishment. The prosecutor further stated, as her race-neutral reason for the strike, that Henderson indicated he had no objection to a person carrying a gun to solve a problem peacefully; the prosecutor felt such a person was not a "State oriented juror." The trial court did not find purposeful discrimination by the state's strike of Henderson. Appellant offered no proof of racial discrimination and only argued to the judge that he disagreed with the state's assessment of Henderson as being defense-oriented for the reasons given by the prosecutor.

In a recent opinion, the U.S. Supreme Court explained the role of the trial judge and the prosecutor in a *Batson* hearing:

Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination. *Hernandez v. New York,* 500 U.S. 352, 358–359, 111 S.Ct. 1859, 1865–1866, 114 L.Ed.2d 395 (1991) (plurality opinion); *id.,* at 375, 111 S.Ct. at 1874 (O'CONNOR, J., concurring in judgment); *Batson, supra,* at 96–98, 106 S.Ct., at 1722–1723. The second step of this process does not demand an explanation that is persuasive, or even plausible. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez,* 500 U.S., at 360, 111 S.Ct., at 1866 (plurality opinion); *id.,* at 374, 111 S.Ct., at 1874 (O'CONNOR, JR., concurring in judgment).

*Purkett v. Elem,* 514 U.S. 765, —— ——, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995).

Essentially what the Supreme Court is saying is that our review should be of the third step, that is, the trial court's decision whether the opponent of the strike has proved purposeful racial discrimination. Therefore, we are not to consider whether the race-neutral explanation is "persuasive or even plausible." *Purkett,* 514 U.S. at ——, 115 S.Ct. at 1771. In this case, the explanations given by the prosecutor were clearly race-neutral and did not in any manner allude to race. The appellant took no steps to refute the explanation and impeach the pros-

ecutor, nor did he offer any evidence to prove purposeful racial discrimination.

█ The burden of persuasion remains with the appellant to establish that a prohibited motive lies behind the state's use of a peremptory challenge. *Camacho v. State,* 864 S.W.2d 524, 528 (Tex.Crim.App.1993); *Tennard v. State,* 802 S.W.2d 678, 681 (Tex. Crim.App.1990). Appellant, having heard the prosecutor's race-neutral explanation, presented nothing more to impeach or rebut the explanation. The trial court's decision was supported by the record and was not "clearly erroneous." *Whitsey v. State,* 796 S.W.2d 707, 723 (Tex.Crim.App.1989) (opinion on reh'g). Appellant's point of error three is overruled.

The judgment of the trial court is affirmed.