# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00473-CR

**Kermit Maxwell Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. D-1-DC-2005-500235, HONORABLE CHARLES F. BAIRD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Kermit Maxwell Jr. guilty of murder as a party to the offense. *See* Tex. Penal Code Ann. §§ 7.01, 7.02, 19.02 (West 2003). The trial court found that a deadly weapon was used in the commission of the murder and sentenced Maxwell to sixteen years in prison. In two issues, Maxwell contends that the trial court erred by failing to instruct the jury on the issue of self defense and that the judgment should be modified to reflect that the trial court, not the jury, made the deadly weapon finding. We modify the judgment to show that the trial court made the deadly weapon finding and, as modified, affirm.

On the evening of April 18, 2005, appellant, Collin Smith, Robert Leal, Valentin Ramirez, Ruben Gonzalez, Michael Mendez, and Timothy Chapa gathered at Mendez's house in Pflugerville for a drug transaction. During the transaction, guns were drawn, shots were fired, and Maxwell, Gonzalez, Ramirez, and Leal each sustained gunshot wounds. Ramirez died in Mendez's

car on the way to the hospital. An autopsy report revealed that Ramirez had been shot once through the heart and that he died from internal bleeding.

At approximately 6:00 a.m. on April 19, 2005, Detective William Poole of the Travis County Sheriff's Office interviewed Mendez at Austin Police Department headquarters. Detective Poole then escorted Mendez back to his house in Pflugerville where several sergeants, detectives, and crime lab technicians were investigating the scene of the crime. During the course of the investigation, Detective Poole obtained arrest warrants for Maxwell and Smith.

On May 9, 2005, Maxwell was indicted for murder under section 19.02 of the Texas Penal Code. The indictment alleged, in relevant part, that:

> Kermit Maxwell, Jr. on or about the 18th day of April, 2005, . . . did then and there intentionally or knowingly cause the death of . . . Valentin Ramirez, by shooting Valentin Ramirez with a deadly weapon, to wit: a firearm.

The case proceeded to trial before a jury on July 18, 2006. The State presented seventeen witnesses, many of whom were law enforcement officers, and numerous exhibits, including photographs of the crime scene, bullets and casings, and ballistics reports. Of the six surviving eyewitnesses, only three testified at trial—Mendez, Smith, and Maxwell.

According to Mendez, who testified for the State, Maxwell and Smith came to his house to purchase a kilogram of cocaine from Ramirez and Leal. He testified that Ramirez gave him the cocaine to show to Maxwell and Smith for their approval. Maxwell and Smith then gave the money to Ramirez and Leal so that they could count it. According to Mendez, Maxwell and Smith

drew guns on the five other men. He testified that Ramirez charged at Smith and that Smith shot Ramirez, but that he had "no idea" if Maxwell shot anybody during the altercation.

Maxwell and Smith, who both testified for the defense, presented a different account of events. According to their testimony, Maxwell and Smith went to Mendez's house to purchase twenty pounds of marijuana. Neither man was armed. At some point during the transaction, Chapa drew a gun on Smith and Ramirez drew a gun on Maxwell. Maxwell claimed that he charged Ramirez and got his hands on Ramirez's gun but did not pull the trigger. Maxwell testified that he believed Chapa shot him. Smith said he grabbed the money and ran outside without being shot. Maxwell testified that Chapa allowed him to leave the scene. Once outside, Maxwell met up with Smith, and the two men drove away in Maxwell's girlfriend's car. Maxwell denied shooting Ramirez. Neither Smith nor Maxwell testified as to when or by whom Ramirez was shot.

After the close of evidence, Maxwell requested a jury instruction on self defense, which was denied by the trial court. The submitted jury charge allowed the jury to find Maxwell guilty of murder only as a party to the offense, with Smith as the principal actor. The jury returned a guilty verdict. At sentencing, the trial court made an affirmative finding that Maxwell used a deadly weapon during the commission of the offense and assessed punishment at sixteen years in prison.

On appeal, Maxwell contends that the trial court erred by failing to instruct the jury on the issue of self defense. Review of alleged jury charge error requires that an appellate court make a two-fold inquiry: (1) whether error exists in the jury charge, and (2) whether sufficient harm was caused by the error to require reversal. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).

A defendant is entitled to an instruction on the law of self defense if there is some evidence that he intended to use force against another and he did use force, but he did so only because he reasonably believed it was necessary to prevent the other's use of unlawful force. *Ex parte Nailor*, 149 S.W.3d 125, 132 (Tex. Crim. App. 2004). A defendant's testimony alone may be enough to require a self defense instruction, but a defendant does not have to testify in order to raise the issue of self defense. *Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984); *VanBrackle v. State*, 179 S.W.3d 708, 712 (Tex. App.—Austin 2005, no pet.). However, if the evidence from either the defendant or the State, viewed in a light favorable to the defendant, does not establish an issue of self defense, no instruction is required. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001).

In order to be entitled to a defensive instruction, a defendant must sufficiently admit to the commission of the offense for which the defensive instruction is requested. *See Nailor*, 149 S.W.3d at 133; *Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999); *Martinez v. State*, 775 S.W.2d 645, 647 (Tex. Crim. App. 1989). Thus, a defendant is not entitled to a jury instruction on self defense if, through his own testimony or the testimony of others, he claims that he did not perform the assaultive acts alleged, or that he did not have the requisite culpable mental state, or both. *VanBrackle*, 179 S.W.3d at 715 (citing *Nailor*, 149 S.W.3d at 134).

In this case, although Maxwell admitted that he struggled for a gun, he did not admit that he fired the gun or that he fired the shot that killed Ramirez. Nevertheless, Maxwell asserts that in admitting that he engaged in a struggle for a gun, he sufficiently admitted the use of force underlying the offense to raise the issue of self defense. In support of this argument, Maxwell

4

cites several cases holding that, if evidence is presented tending to show that the defendant used force to repel an attack, he should not be denied a self defense instruction because he refused to admit to using the type of force alleged by the State. *See Hubbard v. State*, 133 S.W.3d 797, 801-02 (Tex. App.—Texarkana 2004, pet. ref'd); *Kemph v. State*, 12 S.W.3d 530, 532-33 (Tex. App.—San Antonio 1999, pet. ref'd); *Torres v. State*, 7 S.W.3d 712, 716 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *Withers v. State*, 994 S.W.2d 742, 745-46 (Tex. App.—Corpus Christi, 1999, pet. ref'd); *Holloman v. State*, 948 S.W.2d 349, 352 (Tex. App.—Amarillo 1997, no pet.). For example, in *Holloman*, the court held that the appellant sufficiently admitted to assaulting his wife to warrant a jury instruction on self defense because, although the appellant never expressly stated that he "hit" his wife while attempting to defend himself, he testified that they "tussled," that he fell on his wife, that he may have hit her with his legs after falling, and that while "physically engaged" with his wife, he "fought," though "never . . . all out." 948 S.W.2d at 352. However, those cases differ from this case because the defendants in those cases admitted that their actions, although different than the actions alleged by the State, caused the injury to the victim. Maxwell admitted only to struggling with Ramirez over his gun, but not to firing the gun or injuring Ramirez.

Maxwell also cites several cases in which the court of criminal appeals held that defensive instructions were not precluded although the defendant denied intending to injure or kill the victim. *See Martinez v. State*, 775 S.W.2d 645, 647 (Tex. Crim. App. 1989); *Sanders v. State*, 632 S.W.2d 346, 348 (Tex. Crim. App. 1982); *Merritt v. State*, 213 S.W. 941 (Tex. Crim. App. 1919); *Carr v. State*, 87 S.W. 346 (Tex. Crim. App. 1905); *Wesley v. State*, 65 S.W. 904 (Tex. Crim. App. 1901). Each of these cases involve deaths caused by gunshot wounds. In each case, the

5

defendant admitted that he fired the shot that killed the victim, but denied that he intended to kill the victim. Once again, these cases are distinguishable from Maxwell's case because each defendant in those cases admitted that his actions caused the death of the victim.

The fact that Maxwell admitted that he participated in a struggle for a gun does not satisfy the requirement that Maxwell admit to the commission of the underlying offense—i.e., that he shot Ramirez—to warrant an instruction on self defense. On direct examination, Maxwell testified:

[Defense Counsel]:   Do you know—when did you get shot?

[Maxwell]:           I got shot right around the time we was all wrestling with the gun.

[Defense Counsel]:   So you are wrestling with him and the gun went off? Is that what you are saying?

[Maxwell]:           Yes, sir.

[Defense Counsel]:   When you are wrestling, where are your hands?

[Maxwell]:           They was on the gun. I'm trying to put my finger behind the trigger so I don't get shot. I don't know what's going on.

[Defense Counsel]:   All right. So the gun goes off?

[Maxwell]:           Yes, sir.

[Defense Counsel]:   And then does it go off again?

[Maxwell]:           I don't think.

[Defense Counsel]:   Did you shoot anybody?

[Maxwell]:           Not that I know of, sir.

6

In addition to this testimony, the following exchange occurred between the trial judge and defense counsel at the charge conference:

[Defense Counsel]: We would first request a self-defense charge. We believe that the testimony was that there was a struggle with a gun and that somebody may have gotten injured at the time there was a struggle, and Mr. Maxwell clearly testified that he was—felt it was necessary to protect himself from getting killed. We think that based on the testimony of Mr. Maxwell and Mr. Smith that we're entitled to a self-defense charge.

[The Court]: Okay. Let me ask you a question about that because I thought the same thing when they were testifying, but the testimony of Mr. Smith is, is that he's in the corner, he doesn't have a gun and he runs out of the room, so he hasn't shot anybody, according to his testimony. And according to Kermit Maxwell, when you asked him straight up did you shoot anyone and he says no, so they have not—according to their testimony, they have not resorted to any force against unlawful force, as best I can tell. Am I wrong there?

[Defense Counsel]: No, you're right. Our argument is, is that there was a struggle with a gun and it's very possible that Mr. Maxwell doesn't know the gun went off and we feel that in the excitement and the melee and the guns being shot that during the struggle someone may have gotten shot, and so we're asking for a self-defense charge on that basis. But you are right in how you heard the testimony. We are not denying that.

On this record, there is no evidence that Maxwell admitted using force against Ramirez that resulted in Ramirez's death. Because Maxwell did not sufficiently admit to the commission of the offense, he was not entitled to an instruction on self defense. We conclude that the trial court did not err by denying Maxwell's requested instruction on that issue.

7

In his second issue, Maxwell contends that the judgment should be reformed to reflect that the trial court made the deadly weapon finding instead of the jury. The State concedes that the judgment should be modified. Accordingly, we modify the judgment to insert "court" for "jury" in the "Findings on Use of a Deadly Weapon" section of the judgment. *See* Tex. R. App. P. 43.2(b).

Affirmed as modified.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Modified and, as Modified, Affirmed

Filed: August 6, 2007

Do Not Publish