# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-12-00810-CR

**Styron Earl Hale, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
NO. CR-11-0844, HONORABLE GARY L. STEEL, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found Styron Earl Hale guilty of assault on a public servant. The trial court assessed sentence of three years in prison. On appeal, Hale contends that the evidence was insufficient to support the verdict and that his trial counsel provided ineffective assistance. We will affirm the judgment.

### Background

This case arose from events occurring after San Marcos police received a call of a domestic disturbance in an apartment at around 5 a.m. on August 29, 2011. The jury heard testimony from the three officers who responded and from the occupants of the apartment, appellant and his girlfriend, Sarah Barajas.

Officer Eric Charleswell testified that dispatch reported that a woman called to report that a man was throwing her belongings around inside their apartment. When Charleswell arrived at the complex, Barajas flagged him down. He described her as crying and hysterical and

having trouble expressing what was happening. She eventually said that she and her boyfriend, appellant, had an argument that escalated, then she left because she did not want to watch her belongings destroyed.

Officer Zachary Beck testified that dispatch announced that the incident was a physical disturbance. He testified that domestic violence calls are dangerous to responding offers because people tend to be quite emotional when involved in a domestic disturbance. Beck testified that officers like to separate the participants and bring them outside for easier, less risky observation while police sort through the case. Beck said he could see through the open front door that the apartment was in complete disarray, with clothing thrown into piles, lamps turned sideways, and cleaning solutions like bleach poured on the floor.

When Officer Ryan Hartman arrived, he saw an older woman, Barajas's mother, climbing out of a window of the apartment and looking fearful. He went to the apartment's front door and talked to appellant, trying to get him to come outside. Hartman testified that appellant was agitated, pacing, and cursing. Hartman asked, then commanded appellant to come outside where Hartman could see him and be more confident that no weapons were within reach. Instead, appellant attempted to close the door. Hartman testified that he felt that, if appellant closed the door, the disturbance inside the apartment would continue. Hartman grabbed his arm, but appellant retreated into the apartment. Hartman and Beck followed and warned appellant that they would use their tasers if he did not comply with Hartman's direction to leave the apartment.

The officers testified that tasers have two modes of delivering electrical shock with different impact—one is debilitating and the other is merely painful. The former involves firing probes attached to wires from the handheld taser at the subject. Officers testified that if the probes both attach to the subject, they send an electrical current through the subject's body, causing

2

muscles along that path to contract. If the pathway spans critical muscle groups, the subject is rendered incapable of controlling his body's movement. Officers testified that if the probes are close together, the current affects fewer muscles and delivers a painful but not debilitating shock that abates when the electricity stops. If only one of the probes attaches, there is no effect other than the attachment of the probe. The second mode of taser use is called the "dry stun" or "drive stun" in which the handler applies the handheld taser directly to the subject. The officers testified that this has an effect similar to that caused when the taser probes are close together in that it tends to cause pain but not a debilitating contraction of major muscle groups.

Hartman and Beck testified that their attempt to subdue appellant with the taser probes was ineffective because Hartman's taser's probes attached too closely together and only one of Beck's taser's probes attached. The officers testified that appellant remained standing and refused to comply with their orders. They said they then took him to the ground manually and had him mostly face down. The confrontation had moved to the kitchen. Charleswell entered the apartment and attempted to handcuff appellant. Charleswell testified that he cuffed appellant's right wrist, but was unable to cuff the left wrist because appellant tucked his left arm between his body and the floor. Appellant continued to resist being handcuffed. The officers testified that Beck and Hartman then drive stunned appellant until he "obey[ed] and released his arm," allowing Charleswell to cuff his left wrist. Charleswell testified that he checked to see if appellant had any weapons on him, rolling him to one side then the other to check his pockets. Charleswell testified that only after that did appellant bang his head on the stove, hyperventilate, and complain that he could not feel his legs. Beck testified that when appellant started hyperventilating he "seemed kind of out of it."

During the struggle appellant bit Hartman on his thigh. Although he did not bite a hole in the uniform's fabric, he did break Hartman's skin and cause some bruising.

3

Barajas testified that she did not call police, but rather that her mother had been talking to her father on the phone and that her father's coworker called in the complaint. She said that appellant did not hit her that night and had never hit her, although she later conceded that he had choked her before, but not "seriously." She denied telling the officers that appellant was acting crazy or that she had run into a bedroom and locked the door, although she agreed that she had mentioned that she was afraid appellant was going to destroy all of her belongings. She testified that she was not afraid even though appellant had earlier trashed the apartment because she told him she wanted to break up. She said that her mother climbed out through the window because the door was blocked with clothes and furniture, not because her mother was scared. Barajas testified that appellant was acting rationally and was just talking to police officers. She also testified that appellant refused to leave the apartment because he did not want to be charged with public intoxication, but then she said he just did not want confrontation with the police.

Barajas testified that she heard officers ask appellant to come outside and, when he declined, they went into her home without authority. She heard the officers threaten to tase him. She said that appellant then covered his face, the officers tased him, then she heard appellant scream and hit the ground. She later took pictures of appellant's back showing marks that she said were several marks caused by tasers.

Appellant testified that the officers successfully subdued him with tasers on their first attempt. He testified that he blacked out, his body shut down, and he was unable to move. He did not remember being handcuffed. When he regained consciousness, he could not feel his legs. He said that he was tased multiple times. He did not remember struggling with the officers or refusing to put his hands behind his back. He did not remember biting Hartman, but he agreed that the bite was "pretty bad."

4

**Discussion**

Appellant contends that the evidence was insufficient to support the jury's implied finding that he acted voluntarily in biting the police officer and that his trial counsel provided ineffective assistance by failing to collect admissible, evidence relevant to voluntariness and failing to request an instruction on self-defense.

**Sufficiency of the evidence**

When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

In determining the legal sufficiency of the evidence, we must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318. A legal-sufficiency review requires us to defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The jury, as the exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton*, 235 S.W.3d at 778; *see* Tex. Code Crim. Proc. art. 38.04. Thus,

5

when faced with a record of historical facts that supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326.

The standard of review on appeal is the same for both direct and circumstantial evidence cases. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). Circumstantial evidence is as probative as direct evidence in establishing guilt and may alone be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). So long as "the verdict is supported by a reasonable inference, it is within the province of the factfinder to choose which inference is most reasonable." *Laster v. State*, 275 S.W.3d 512, 523 (Tex. Crim. App. 2009). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *Allen v. State*, 249 S.W.3d 680, 688 (Tex. App.—Austin 2008, no pet.).

A person commits an assault if he intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code § 22.01(a)(1). The trial court instructed the jury that it could not convict appellant if it had at least reasonable doubt regarding whether appellant voluntarily bit the officer.

Appellant argues that the jury could not reasonably have concluded that, in the midst of being tased, he was able to voluntarily bite Hartman. He contends that the taser is intended to eliminate voluntary conduct and that there is no evidence it did not do so in this case.

The jury heard conflicting versions of events. The defense witnesses testified that the initial tasing brought appellant down. Appellant testified that he did not remember anything between when the first probes attached to his body and when he woke up handcuffed and unable to feel his legs. He did not remember biting Hartman and argues that he did not do so with any level

6

of volition. The officers testified, however, that the initial tasing did *not* subdue appellant and so they resorted to manually subduing appellant with an assist from the painful, but not debilitating, drive tasing. They testified that appellant resisted for several seconds—during which time he bit Hartman—before voluntarily offering his left hand for cuffing.

The jury's choice turns on their view of the witnesses' credibility. Their verdict shows that they chose to believe the officers' version of events. On the record presented, we cannot overturn that choice on appeal. With that choice made, they may have believed that, if appellant chose to resist handcuffing by tucking his left arm under his body, then chose to comply by offering his left wrist for handcuffing, he could have in the interim knowingly and voluntarily chosen to bite Hartman. Viewed in the required manner, the record contains sufficient evidence to support the verdict.

**Ineffective assistance of counsel**

Appellant contends that his trial counsel provided ineffective assistance by failing to collect admissible evidence on "the effect of electrocution on voluntary conduct" and failing to request an instruction on self-defense. To prevail on this claim, appellant must show that counsel made such serious errors that he was not functioning effectively as counsel and that these errors prejudiced appellant's defense to such a degree that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 771-72 (Tex. Crim. App. 1999). In assessing the performance of counsel, we must review the totality of the representation and the circumstances of each case without the benefit of hindsight. While a single error will not typically result in a finding of ineffective assistance of counsel, an egregious error may satisfy the *Strickland* prongs on its own. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim.

7

App. 2011). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To overcome this presumption, any allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). Without a record explaining the reasons for counsel's decisions, we will not find counsel's performance deficient if any reasonably sound strategic motivation can be imagined. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2003).

The court of criminal appeals has written that the record on direct appeal will generally "not be sufficient to show that counsel's representation was so deficient as to meet the first part of the *Strickland* standard" because "[t]he reasonableness of counsel's choices often involves facts that do not appear in the appellate record." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). An application for a writ of habeas corpus is often the more appropriate vehicle to raise ineffective assistance of counsel claims. *Id*.

### Evidence of the effect of taser use

Appellant contends that his counsel was ineffective for failing to obtain and offer evidence concerning the amount of electricity that went into his body or the effects it could have, including publications on drive stunning, an expert witness on drive stunning, judicial notice of opinions discussing it, how many taser hooks were removed from his body or the number of taser burns on his body, the content of the taser logs to confirm the number of discharges, and the records of his medical treatment following the tasing. The only publication appellant offered was not admitted because it was not authenticated. Appellant made this argument in his motion

8

for new trial but there are no exhibits attached to that motion and there is no record of a hearing on that motion.

Other than the cases cited in appellant's brief,[1] the record does not reveal what evidence he believes should have been brought into the record. Appellant has identified types of evidence that could have been offered, but has not shown specific, admissible evidence that was omitted or, most importantly, what effect it would have had on the verdict. He has not introduced evidence from trial counsel on what efforts, if any, trial counsel made regarding obtaining the evidence appellant advocates and whether counsel had a valid strategic reason for the actions or omissions. On this record, we cannot say that appellant has shown that trial counsel's failure to obtain and offer this type of evidence was ineffective.

*Self-defense*

Appellant contends that trial counsel was ineffective for failing to request that the jury be instructed on self-defense. A person is justified in using force against another when and to the degree the actor reasonably believes the force was immediately necessary to protect the actor against the other's use or attempted use of unlawful force. Tex. Penal Code § 9.31(a). The actor's belief that the force was immediately necessary is presumed reasonable if the actor knew or had reason to believe that the person against whom the force was used was attempting to enter the actor's occupied habitation unlawfully and with force. *Id.* § 9.31(a)(1).

To raise the issue of self-defense, the accused must admit the conduct charged in the indictment and then offer self-defense as justification for the action. *Anderson v. State*, 11 S.W.3d

---

[1] *See, e.g.*, *Hereford v. State*, 302 S.W.3d 903, 908-10 (Tex. App.—Amarillo 2009), *aff'd*, 339 S.W.3d 111 (Tex. Crim. App. 2011); *City of Lubbock v. Nunez*, 279 S.W.3d 739, 740 (Tex. App—Amarillo, 2007, no pet.).

9

369, 372 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd); *Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999) (discussing defense of necessity as justification). Self-defense is a justification for actions taken and is thus logically inconsistent with a denial of the conduct. *Sanders v. State*, 707 S.W.2d 78, 81 (Tex. Crim. App. 1986); *see Young*, 991 S.W.2d at 838. Admitting the "charged conduct" does not necessarily mean admitting the commission of every statutory element of the offense. *Jackson v. State*, 110 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). *But see Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007).[2] In *Martinez v. State*, a defendant charged with murder admitted to pulling a gun, firing into the air, and having his finger on the trigger when the fatal shot was fired, but denied the element of "intent to kill." 775 S.W.2d 645, 645-47 (Tex. Crim. App. 1989). The Court held he had admitted committing the offense sufficiently to permit the trial court to consider whether the evidence supported his claim of self-defense enough to warrant giving the instruction. *Id.*

Appellant did not admit the offense, however. His testimony was that he blacked out from the first moment he was tased. He argued that, therefore, he could not have formed an intent to do anything. That inability also would have precluded forming a reasonable belief that resistance was necessary. The theory that trial counsel pursued—that the tasers rendered him incapable of committing the offense charged—is consistent with appellant's testimony and inconsistent with

---

[2] In *Shaw*, the court of criminal appeals wrote:

> We have said with respect to defenses such as necessity and self defense that when the defensive evidence merely negates the necessary culpable mental state, it will not suffice to entitle the defendant to a defensive instruction. Rather, a defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct.

*Shaw v. State*, 243, S.W.3d 647, 659 (Tex. Crim. App. 2007).

requesting and receiving the self-defense instruction. Pursuing the strategy consistent with appellant's testimony is a reasonable strategic decision. On this record, we cannot say that failing to request an instruction on self-defense rendered trial counsel's assistance ineffective.

### Overall performance

Even if the failures to adduce particular evidence on the effect of tasers and to request a self-defense instruction were mistakes by counsel, they would not require that we find trial counsel ineffective. He participated in voir dire, exercised peremptory strikes, cross-examined the police officers, elicited a contrasting and potentially exculpating version of events during the defense case, and argued for the jury to acquit based on the involuntariness of appellant's biting. Given the record as a whole, we conclude that appellant has not shown that his trial counsel rendered ineffective assistance such that he was denied a fair trial.

### CONCLUSION

We affirm the judgment of conviction.

_____

Jeff Rose, Justice

Before Justice Puryear, Pemberton, and Rose

Affirmed

Filed: August 30, 2013

Do Not Publish