In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00103-CR
______________________________


JARROD S. ROZEAN, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 28517-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

          Jarrod S. Rozean appeals from the sentence imposed in the final adjudication of his
guilt following the revocation of his deferred adjudication community supervision. 
          Rozean raises a single issue on appeal. He contends the trial court abused its
discretion in the sentencing process because the court improperly considered an
unadjudicated and unproven offense that was pending in another county at the time of
sentencing. There was no objection to the evidence about that pending prosecution, nor
was there any complaint raised at the hearing to the court's consideration of that
information in setting punishment. Where no objection is made, a claim of error is not
preserved for appellate review. Tex. R. App. P. 33.1; Malpica v. State, 108 S.W.3d 374, 
379 (Tex. App.‒Tyler 2003, no pet.); Bernal v. State, 74 S.W.3d 76, 82 (Tex.
App.‒Eastland 2002, pet. ref'd).
          The contention of error has not been preserved for our review.
          We affirm the judgment.
 
                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      November 26, 2003
Date Decided:         December 1, 2003

Do Not Publish



Roman', serif">Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            In a trial to the bench, Freddie Eugene Royal, Jr., was convicted of assaulting an elderly
individual in connection with an altercation with his sixty-five-year-old uncle, Lorenzo Royal.


 
Freddie now complains of the trial court's implicit rejection of his assertion that he acted in self-defense. We affirm.
I.         FACTUAL BACKGROUND
            Lorenzo admitted to drinking on the night of the altercation and testified that he had gone to
bed at around 11:00 p.m. and that, at some point early the next morning, his nephew, Freddie, had
entered his bedroom, hit him in the head, kicked him in the right hip, and spit on him. After about
two hours, Lorenzo went to a neighbor's house and asked her to call the police. 
            Greenville Police Officer Chris Neaville responded to the family violence call at
approximately 8:23 a.m., November 26, 2004. Neaville met Lorenzo in the front yard where
Lorenzo explained that Freddie had hit Lorenzo's face and kicked his hip. Neaville did not see any
marks on Lorenzo, but added that, on darker skin, such marks are often difficult to detect. Neaville
testified he found Freddie asleep on the couch, smelling strongly of alcohol and very incoherent. 
According to Neaville, Freddie initially did not explain his version of the incident to Neaville and
simply acted like he was surprised or confused that Neaville was there and asked Neaville what was
going on. 
            Freddie contradicted Lorenzo's account and denied that he ever hit or kicked Lorenzo as he
slept. Suggesting that Neaville does not like him due to several past meetings, Freddie testified that
Neaville dismissed his account of the events by responding to Freddie's explanation that "you're just
drunk." Freddie explained that the entire matter all stemmed from an incident that night or morning,
sometime between 1:00 and 3:00 a.m., in which Lorenzo actually attacked Freddie because Freddie
was beating Lorenzo's dog with a belt. Lorenzo admitted that he did grab Freddie when Freddie
began beating the dog. 
            However, Lorenzo distinguished that incident from the incident later when Freddie came into
his bedroom and started hitting and kicking him while he was in bed. There is a period in his
testimony where Lorenzo seemed confused about to which incident he was testifying. However,
Lorenzo's testimony later confirmed that this incident involving the dog occurred earlier in time and
in a different part of the house than did the incident for which Lorenzo called the police. Freddie's
bed is located in the living room. Freddie acknowledged that the dog incident occurred in the room
in which Freddie's bed was located. In short, both men testified that there was an altercation between
the two of them when Freddie started hitting Lorenzo's dog. However, Freddie denied there was ever
a second incident in which he went into Lorenzo's bedroom and began hitting and kicking Lorenzo. 
            The State alleged that Freddie "did then and there intentionally and knowingly by an act,
engage in conduct that caused bodily injury to Lorenzo Gomeliel Royal, an elderly individual, by
then and there hitting the said Lorenzo Gomeliel Royal in the head with his fist and/or kicking the
said Lorenzo Gomeliel Royal in the hip." Clearly, these allegations refer to the second altercation
between Freddie and Lorenzo; there is simply no testimony that the first incident involved any
amount of hitting or kicking. In fact, Freddie testified that, when Lorenzo began to choke him in
response to the dog's cries, Freddie only "swung down" to break the choke hold Lorenzo had on him. 
            Freddie appeals his conviction, arguing the evidence was legally and factually insufficient
to support the trial court's verdict because the evidence established that he acted in self-defense.
II.       LEGAL SUFFICIENCY
            A.        Legal Sufficiency Standard of Review
            When an appellant challenges the legal sufficiency of the evidence supporting a fact-finder's
rejection of a defense such as self-defense, 
we look not to whether the State presented evidence which refuted appellant's
self-defense testimony, but rather we determine whether after viewing all the
evidence in the light most favorable to the prosecution, any rational trier of fact
would have found the essential elements of [the offense] beyond a reasonable doubt
and also would have found against appellant on the self-defense issue beyond a
reasonable doubt. 

Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).
            Again, the indictment alleges that Freddie hit and/or kicked Lorenzo. Therefore, in order to
find Freddie guilty of the offense as charged, the trial court had to find that the second incident, the
one in which Freddie came into Lorenzo's bedroom and began to hit and kick him, did, in fact, occur. 
We measure the evidence to support this finding.
            B.        Legally Sufficient Evidence Supports Conviction for Injury to an Elderly Person
            "A person commits an offense if he intentionally, knowingly, recklessly, or with criminal
negligence causes to . . . [an] elderly individual . . . bodily injury." Tex. Pen. Code Ann.
§ 22.04(a)(3). An "elderly individual" is defined as "a person 65 years of age or older." Tex. Pen.
Code Ann. § 22.04(c)(2) (Vernon Supp. 2006).
            Here, the record shows that Lorenzo was sixty-five years old when the offense occurred. The
record also shows that Lorenzo had arthritis in his hips that forced him to walk with a cane. Lorenzo
described the attack as feeling like a "ton of bricks." He testified that he could only sit up on the bed
for about two hours. He explained that his face, forehead, and hip hurt after the attack. Lorenzo
clearly identified Freddie as the individual who hit and kicked him. 
            Further, since Freddie denied that this altercation occurred, he presented no evidence that he
acted in self-defense. A rational trier of fact could have found the essential elements of the offense
charged and could have found against Freddie on the self-defense issue as it relates to the offense
charged. Viewing the evidence in a light most favorable to the verdict, we conclude that the
evidence is legally sufficient to sustain the trial court's verdict. 
III.      FACTUAL SUFFICIENCY
            A.        Factual Sufficiency Standard of Review
            In a factual sufficiency review, we view all the evidence in a neutral light and determine
whether the evidence supporting the verdict is too weak to support the finding of guilt beyond a
reasonable doubt or if evidence contrary to the verdict is strong enough that the State could not have
met its standard of proof beyond a reasonable doubt. See Zuniga v. State, 144 S.W.3d 477, 486 (Tex.
Crim. App. 2004); Yarborough v. State, 178 S.W.3d 895, 904 (Tex. App.—Texarkana 2005, pet.
ref'd). In conducting a factual sufficiency review, we must discuss the evidence that appellant
contends most undermines the verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App.
2003).
            In a trial to the bench, the trial court sits as the sole trier of fact and, as such, is the exclusive
judge of the credibility of the witnesses and the weight to be given to their testimony. See Joseph
v. State, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995); Mattias v. State, 731 S.W.2d 936, 940 (Tex.
Crim. App. 1987). Unless the available record clearly demonstrates that a different result is
appropriate, we must defer to the trier of fact's determination of what weight to give conflicting
testimony because resolution of facts often turns on evaluation of credibility and demeanor. See
Johnson v. State, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).
            B.        Elements and Availability of Self-Defense
            A person is justified in using force against another when and to the degree he or she
reasonably believes the force is immediately necessary to protect himself or herself against the
other's use or attempted use of unlawful force. See Tex. Pen. Code Ann. § 9.31(a) (Vernon 2003). 
However, "to rely on 'self-defense,' the defendant must first admit," or "substantially admit,"
"committing the conduct which forms the basis of the indictment; the defense is inconsistent with
a denial of the conduct." See East v. State, 76 S.W.3d 736, 738 (Tex. App.—Waco 2002, no pet.);
see also Young v. State, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999) (concluding that, in order to
assert defensive issue of necessity, defendant must admit conduct charged in indictment); Kimbrough
v. State, 959 S.W.2d 634, 640 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (holding
"[s]elf-defense is a justification for one's actions and necessarily requires an admission of the
conduct at issue"). While the defendant need not admit the commission of every statutory element
of the offense, he or she must admit committing the conduct giving rise to the indictment. See
Jackson v. State, 110 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd); Gilmore
v. State, 44 S.W.3d 92, 97 (Tex. App.—Beaumont 2001, pet. ref'd).
            A defendant has the burden of producing some evidence to support a claim of self-defense.
Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once the defendant produces such
evidence, the State then bears the burden of persuasion to disprove the raised defense. Id. The
burden of persuasion is not one that requires the production of evidence; rather, the State need only
prove its case beyond a reasonable doubt. Id. When a fact-finder determines that the defendant is
guilty, there is an implicit finding against the defensive theory. Id.
            C.        Failure to Admit to Conduct Means Freddie Presented No Evidence of Self-Defense

            Looking, as we must, to the evidence Freddie characterizes as that which most undermines
the verdict, we point out that the evidence contrary to the verdict is limited to Freddie's denial that
the second altercation even occurred.


 Therefore, as self-defense relates to the charged offense,
Freddie failed to carry his burden of producing some evidence to support his claim of self-defense.
            Again, we point out that there were apparently two altercations between Freddie and Lorenzo
that night/morning, which occurred in different locations in the house. As previously discussed, the
State produced legally sufficient evidence that Freddie hit and kicked Lorenzo as charged in the
indictment. Freddie denied this second incident—the one for which he was convicted. Freddie
limits his argument to the first altercation when Lorenzo grabbed Freddie after Freddie hit the dog. 
Freddie argues that the evidence shows he acted in self-defense when he struck Lorenzo, who
became enraged and violent when Freddie began hitting his dog. However, Freddie's argument
ignores the second incident, which forms the basis of the offense charged. Of course, having
determined that the evidence supports the trial court's finding that the second incident did occur, this
first incident simply is not at issue. 
            While the issue of self-defense was likely raised with respect to the first altercation when
Lorenzo attacked Freddie for hitting his dog, self-defense is unavailable to Freddie with respect to
this offense where he denies having committed the act. Freddie admitted only that he "swung down"
when Lorenzo grabbed him in the first altercation. This admission is insufficient since it does not
relate to the conduct forming the basis of the offense charged in the indictment. See Young, 991
S.W.2d at 838. Therefore, there is no evidence that Freddie acted in self-defense with respect to the
offense charged. That being said, we conclude that the evidence was factually sufficient to support
the trial court's rejection of Freddie's claim of self-defense.
IV.      CONCLUSION
            The evidence is legally and factually sufficient to support the trial court's finding that Freddie
committed the offense charged and the trial court's rejection of Freddie's assertion that he acted in
self-defense. We overrule Freddie's point of error.
            Accordingly, we affirm the trial court's judgment.
 


                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          April 7, 2006
Date Decided:             August 2, 2006

Do Not Publish