Opinion issued July 21, 2005
     



















In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01064-CR




DOUGLAS ALBERT DOUGHERTY, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 23rd Judicial District Court
Brazoria County, Texas
Trial Court Cause No. 41,314




MEMORANDUM OPINION
          We overrule appellant’s motion for rehearing. However, we withdraw our
opinion and judgment of March 10, 2005, and issue this opinion in its stead.           A jury convicted appellant, Douglas Albert Dougherty, of recklessly, or with
criminal negligence, causing bodily injury to an elderly individual. See Tex. Pen.
Code Ann. § 22.04 (Vernon 2003). The trial judge assessed punishment at four
years’ confinement. In three points of error, appellant contends: (1) the evidence was
factually insufficient to support his conviction; (2) the trial court’s failure to sua
sponte limit the definitions of culpable mental states in the jury charge to the results
of the act was egregious error; and (3) appellant’s trial counsel provided ineffective
assistance during trial. We affirm. BACKGROUND
          Appellant lived in a mobile home on property owned by his 73-year-old
mother, Marie Dougherty. Near the date of the offense, Dougherty wrote a letter to
appellant telling him he would have to move out of his trailer and get off her property. 
She also told appellant he could not use the Dodge truck to go to work. Dougherty
was very angry about a woman that had been in appellant’s trailer. Appellant went
to Dougherty’s house to ask her if he could use the truck because he was afraid that
he would lose his job. An argument between the two ensued.
          Dougherty’s neighbor, Johnny Dirzanowski, testified that on the day of the
offense he heard some yelling and the sound of glass breaking when he was in his
yard. The noise was coming from the direction of Dougherty’s house. Dirzanowski
testified that he heard a male voice screaming, “I’m going to kill you” and “you are
going to be with dad.” Dirzanowski knew that Dougherty’s husband had recently
died and called 911.
          Deputy K. Jordan of the Brazoria County Sheriff’s Office received a dispatch 
to Dougherty’s home to investigate a family disturbance. As he walked up to the
house he heard loud voices inside. He heard a woman screaming, “I told you no.
Now leave me alone and get out of here.” Jordan also noticed a broken window. 
When Jordan knocked on the door, the woman screamed, “Turn me loose. Let me go.
Let me get to the door.” When Jordan entered the home, he saw a man and a woman
scuffling. The woman was trying to get to the door, while the man held her back by
grabbing her around the waist. Jordan grabbed appellant, and then another officer
detained him.
          Jordan testified that Dougherty was hysterical, and when he asked her what had
happened, she told him that appellant had come to her house, that they got into an
argument, and that when she told appellant he could not use the truck, he became
furious, grabbed her, and threw her into a chair. The chair hit a window and broke
it. Appellant then grabbed a pillow and tried to smother Dougherty to keep her from
screaming. Dougherty told Jordan that appellant was trying to kill her. Dougherty
told Jordan that appellant said that he would send her to be with his father and that
he would kill her before he would let her send him back to prison. Jordan saw
scrapes, bruises, and a small cut on Dougherty’s right arm. He also noticed that
Dougherty had blood on her dress near her left buttock. Jordan took a written
statement from Dougherty, which she signed in his presence.
          Susie Bundick, the victim’s daughter, testified that on the day of the offense,
her mother called and said that appellant had tried to kill her. When Bundick got to
Dougherty’s house, the police were already there. Dougherty kept repeating that
appellant had tried to kill her. Bundick noticed bruising on Dougherty’s arms and a
cut on her buttock. She checked Dougherty’s blood pressure and determined that it
was 220 over 150. Dougherty told Bundick that appellant had pushed her and then
tried to cover her face with a pillow. Dougherty said that the bruises on her arms
were from where appellant held and shoved her and that the cut on her buttocks came
when appellant shoved her in a chair with broken glass in it. Dougherty dictated a
statement to the police, Bundick wrote it down, and Dougherty signed it.
          Katrina Bright, Dougherty’s granddaughter, testified that on the day of the
offense, her mother called her to come over to Dougherty’s house. When Bright, an
emergency medical technician, got to her grandmother’s house, she noticed that
Dougherty had contusions, abrasions, and a 3-inch cut on her buttocks. Dougherty,
who was hoarse and physically shaking, told Bright that the bruises on her arms were
caused by appellant’s holding her. Dougherty also told Bright that the cut on her
buttocks happened when appellant shoved her into a chair, the chair broke a window,
then appellant shoved her back into the chair on the broken glass. Bright was present
when her grandmother gave her statement to the police.
          In contrast to the State’s version of the evidence, appellant testified that he
went to his mother’s house, where they argued about the woman in appellant’s trailer
and appellant’s use of the truck. Appellant testified that he did not intend to injure
his mother. He claimed that he put his hand on the back of the chair and that the chair
struck the window and broke it. He claimed that he did not push Dougherty, but that
she calmed down, sat in the chair, and cut herself. Appellant claimed that he did not
have a pillow or try to smother Dougherty, but then admitted throwing a pillow on the
floor because he was angry. Appellant did not know where Dougherty’s cuts came
from, but he testified that she did have 10 cats. He claimed that he did not give her
a bear hug, but did put his arms around her to calm her down because she was
screaming. He testified that he did not have his hands on Dougherty when Deputy
Jordan entered the house.
          Dougherty also testified at trial and recanted her earlier statements about
appellant’s trying to kill her. Dougherty testified that the cats caused some of the
scratches on her arms and that some of the injuries were the result of aspirin therapy. 
Dougherty testified that appellant did not throw her into the chair, but that he
accidentally broke the window when he pushed in her chair while he was trying to
calm her down. Dougherty testified that she did not remember giving any statements
to the police: “I don’t remember giving a statement. I might have said anything, but
I was too upset.”
          A grand jury indicted appellant on October 11, 2001 for “intentionally and
knowingly caus[ing] bodily injury to Marie Dougherty, a person sixty-five (65) years
of age or older, by grabbing Marie Dougherty and pushing her.” The trial judge
instructed the jury on this third degree felony offense, as well as the lesser-included
offence of “injury to an elderly individual, a state jail felony.” The jury found
appellant guilty of “injury to an elderly individual, a state jail felony.” 
DISCUSSION
Factual Sufficiency of the Evidence
          In appellant’s first point of error, he contends the evidence is factually
insufficient to support his conviction. In a factual-sufficiency review, we view all of
the evidence in a neutral light, and we will set the verdict aside only if the evidence
is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary
evidence is so strong that the standard of proof beyond a reasonable doubt could not
have been met. Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004).
          We must also employ appropriate deference so that we do not substitute our
own judgment for that of the fact finder. See Zuniga v. State, 144 S.W.3d 477, 482
(Tex. Crim. App. 2004). Our evaluation should not intrude upon the fact finder’s role
as the sole judge of the weight and credibility given to any witness’s testimony. Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). What weight to be given
contradictory testimonial evidence is within the sole province of the fact finder
because that determination turns on an evaluation of credibility and demeanor. Id.
at 408. The fact finder is entitled to judge the credibility of the witnesses and may
choose to believe all, some, or none of the testimony presented. Id. at 407.
          Here, the State presented Dougherty’s neighbor, Dirzanowski, who testified
that he called the police after hearing screams coming from Dougherty’s house. 
Further, the State produced the testimony of Deputy Jordan, who saw appellant
grabbing Dougherty around the waist and also heard Dougherty say that appellant
was trying to kill her, had tried to smother her with a pillow, and had pushed her into
a chair causing her to cut her buttocks. The State also produced the testimony of
Dougherty’s daughter and granddaughter, both of whom testified that Dougherty told
them appellant was trying to kill her and had pushed her into a chair. 
          In his favor, appellant presented his own testimony and that of his mother, the
victim. Dougherty denied telling Deputy Jordan, Bundick, or Bright that appellant
tried to kill her. She admitted she was angry and hysterical during the occurrence and 
believed she would say anything without knowing or meaning what she said. 
          Appellant’s own testimony was consistent with Dougherty’s. He testified that
he did not hurt Dougherty, but was just trying to calm her down. Appellant testified
that he never pushed, cut, or tried to suffocate Dougherty in any way. Appellant also
presented the testimony of his cousin, Janet Badger, who stated that Dougherty could
get extremely angry at times and yell and scream. Badger also stated she never
observed any violence accompanying Dougherty’s expression of anger. 
          Having viewed all of the evidence in a neutral light, we find that the evidence
supporting appellant’s conviction is not too weak to support the finding of guilt
beyond a reasonable doubt; nor is the contrary evidence so strong that the beyond-a-reasonable-doubt standard could not have been met. The fact finder is entitled to
judge the credibility of the witnesses and may choose to believe all, some, or none of
the testimony presented. Cain, 958 S.W.2d at 407. The jury was entitled to believe
the testimony of Deputy Jordan and Dougherty’s daughter and granddaughter over
the testimony of appellant, a convicted felon, and Dougherty, his mother, especially
in light of Dougherty’s prior inconsistent statements to police.
          When the evidence is conflicting, the jury’s verdict is generally regarded as
conclusive. See McGarity v. State, 5 S.W.3d 223, 232 (Tex. App.—San Antonio
1999, no pet.). We hold the evidence demonstrates the jury was rationally justified
in finding appellant guilty of injury to an elderly individual beyond a reasonable
doubt. See King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).
          We overrule appellant’s first point of error.
Failure to Limit Definitions of Culpable Mental States in Jury Charge
          In appellant’s second point of error, he contends the trial court erred because
it did not sua sponte limit the definitions of the culpable mental states in the jury
charge to the results of appellant’s conduct. Appellant did not object to the charge;
therefore we will reverse only “if the error is so egregious and created such harm that
[appellant] ‘has not had a fair and impartial trial’—in short ‘egregious harm.’” See
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). To conduct an
egregious harm analysis, we consider “[1] the entire jury charge, [2] the state of the
evidence, including the contested issues and weight of probative evidence, [3] the
argument of counsel and [4] any other relevant information revealed by the record of
the trial as a whole.” Id. 
          A grand jury indicted Appellant for “intentionally and knowingly caus[ing]
bodily injury to Marie Dougherty, a person sixty-five (65) years of age or older, by
grabbing Marie Dougherty and pushing her.” See Tex. Pen. Code Ann. § 22.04
(Vernon 2003). The trial court instructed the jury it could find appellant guilty of
either the third degree felony of intentionally or knowingly causing bodily injury to
Dougherty, or the state-jail felony of recklessly or with criminal negligence causing
bodily injury to Dougherty. See Tex. Pen. Code Ann. § 22.04(a)(3), (f) (Vernon
2003). 
          The trial court, using the culpable mental state definitions from the Penal Code,
instructed the jury in the abstract portion of the charge as follows:
 A person acts intentionally, or with intent, with respect to the nature
of his conduct or to a result of his conduct when it is his conscious
objective or desire to engage in the conduct or cause the result.
 
A person acts knowingly or with knowledge, with respect to the
nature of his conduct or circumstances surrounding his conduct when
he is aware of the nature of his conduct or that the circumstances
exist. A person acts knowingly or with knowledge, with respect to a
result of his conduct when he is aware that his conduct is reasonably
certain to cause the result.
 
A person acts recklessly, or is reckless, with respect to the
circumstances surrounding his conduct or to the result of his conduct
when he is aware of but consciously disregards a substantial and
unjustifiable risk that the circumstances exist or the result will occur.
. . . 
 
A person acts with criminal negligence, or is criminally negligent,
with respect to circumstances surrounding his conduct or the result
of his conduct when he ought to be aware of a substantial and
unjustifiable risk that circumstances exist or the result will occur. . .
.
 
(Emphasis added); see Tex. Pen. Code Ann. § 6.03(a)-(d) (Vernon 2003).
          Appellant contends the trial court erred when it failed to limit the definitions
of the culpable mental states because the definitions allowed the jury to convict
appellant based on an intent to perform the conduct rather than an intent to cause
the result of his conduct. See Haggins v. State, 785 S.W.2d 827, 828 (Tex. Crim.
App. 1990). Injury to an elderly person is a result-oriented crime. Id. Appellant
is correct that the trial could should have limited the definitions in the jury charge
“to the kind of mental state which the . . . statute criminalizes.” Id. However, the
trial court’s failure to sua sponte limit the culpable mental state definitions in this
case did not result in egregious error.
          In the application paragraphs, the trial court charged the jury,
Now if you find from the evidence beyond a reasonable doubt that .
. . the defendant did then and there intentionally or knowingly cause
bodily injury to Marie Dougherty . . . then you will find the defendant
guilty of injury to an elderly individual, a third degree felony, as
charged in the indictment. . . .
 
Now if you find and believe beyond a reasonable doubt that . . . the
defendant . . . did then and there recklessly or with criminal
negligence cause bodily injury to Marie Dougherty . . . then you will
find the defendant guilty of injury to an elderly individual, a state jail
felony . . . .
 
Although the trial court gave the full statutory definitions of the culpable mental
states in the abstract portion of the charge, the court properly limited the definitions
in the application paragraphs. Thus, the jury could only convict appellant if it found
that appellant intentionally, knowingly, recklessly, or with criminal negligence
caused Dougherty’s injuries.
          When the application paragraph correctly instructs the jury, an error in the
abstract instructions is not egregious. Medina v. State, 7 S.W.3d 633, 640 (Tex.
Crim. App. 1999); see also Weatherred v. State, 35 S.W.3d 304, 310 (Tex. App. –
Beaumont 2001, pet. ref’d) (finding no egregious error when the specific language
in application paragraph properly limited broad language in definitions).           Patrick v. State is analogous to this case. See Patrick v. State, 906 S.W.2d
481, 491-494 (Tex. Crim. App. 1995). In Patrick, the trial court did not properly
limit the definitions of the culpable mental states for the result-oriented crime of
capital murder. Id. at 492-94. The definitions were, however, limited to the result
of the conduct in the application paragraph. Id. at 493.
           The court first noted that the word “intentionally” modified the phrase “cause
the death” in the application paragraph. Id. The court reasoned that the jury
understood that the “result of conduct” language in the definition applied to the
“cause the death” language in the application paragraph. Id. Thus, the court held
that the application paragraph properly instructed the jury to apply only the
appropriate portion of the broad definitions and found the trial court did not harm
the defendant when it failed to limit the definitions to the result of the defendant’s
conduct. Id. at 493. 
           In this case, the trial court did not limit the definitions of the culpable mental
states to the result of appellant’s conduct. However, as in Patrick, the application
paragraph correctly instructed the jury on the law. Additionally, the applicable
mental states here modified “cause bodily injury to Marie Dougherty” in the
application paragraph. Thus, the trial court did not harm appellant by failing to
limit the definitions of intentionally, knowingly, recklessly, and with criminal
negligence.            Appellant’s reliance on Banks v. State is misplaced. See 819 S.W.2d 676, 678-82 (Tex. App.—San Antonio 1991, pet. ref’d). In Banks, the courted fail to limit the
definitions of the culpable mental states for a result-oriented crime, but also failed to
limit the application paragraph to the results of the conduct. Id. at 680.                   Egregious error is reversible only if there is “actual, not just theoretical, harm
to the accused.” Almanza, 686 S.W.2d at 174. “[B]ecause the facts, as applied to the
law in the application paragraph, pointed the jury to the appropriate portion of the
definitions, no harm resulted from the court’s failure to limit the definitions of
culpable mental states to [the] result and circumstances.” Hughes v. State, 897
S.W.2d 285, 296 (Tex. Crim. App. 1995).
            We overrule appellant’s second point of error.
Ineffective Assistance of Counsel
            In appellant’s third point of error, he contends he received ineffective
assistance of counsel at trial. Specifically he contends his counsel was ineffective by
failing (1) to request a jury charge on accident; (2) to object to the four definitions of
the culpable mental states in the jury charge or request that the definitions be limited
to the result of appellant’s conduct; and (3) to object to the State’s jury argument that
“urged conviction on a theory not charged in the indictment” and focused on the
nature of appellant’s conduct rather than the result.
            Under Strickland v. Washington, appellant can prevail on an ineffective
assistance of counsel claim only if he can meet a two-pronged test. First, he must
show that counsel’s performance was deficient by falling below an objective
standard of reasonableness. See 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984);
Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Second, he must show
that there is a probability sufficient to undermine the confidence in the outcome that
but for counsel’s unprofessional errors, the result of the proceeding would have been
different. See id.
            We “indulge in a strong presumption that counsel’s conduct falls within a wide
range of reasonable assistance, [and] the challenged action ‘might be considered
sound trial strategy.’” Strickland, 466 U.S. at 689, 104 S. Ct. at 2065 (citing Michel
v. Louisiana, 350 U.S. 91, 101, 76 S. Ct. 158, 164 (1955)). Appellant must overcome
this presumption. Gamble v. State, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st
Dist.] 1996, no pet.). Isolated instances of counsel’s failure to object are insufficient
to establish counsel as constitutionally ineffective. Hathorn v. State, 848 S.W.2d
101, 118 (Tex. Crim. App. 1992).
            Accident
            Appellant contends trial counsel was ineffective because he failed to request
a jury instruction on the accident defense. The authority to establish defenses to
penal code violations rests solely within the province of the Texas Legislature. 
Giesberg v. State, 984 S.W.2d 245, 250 (Tex. Crim. App. 1998). A defense not
specifically authorized by the Legislature “does not warrant a separate instruction.” 
Id. 
            In Chapter 8 of the Penal Code, the Legislature designates insanity, mistake of
fact, mistake of law, intoxication, duress, entrapment, and age as statutory defenses
to penal code violations. See Tex. Pen. Code Ann. §§ 8.01-8.07 (Vernon 2003). 
Accident is not a legislatively authorized defense. See id.; Kimbrough v. State, 959
S.W.2d 634 (Tex. App.—Houston [1st Dist.] 1995, pet. ref’d) (acknowledging Texas
law does not recognize “accident” defense).
            Further, appellant claims his witnesses “raised the defense of accident which
negates Appellant’s mental culpability.” Although “accident” is not a statutory
defense, it is a defensive theory that negates an element of the charged offense. See
Giesberg, 984 S.W.2d at 250 (describing the defensive theory of “alibi.”). A
defensive theory requires nothing more than that appellant present evidence and argue
to the jury that he did not possess any of the requisite culpable mental states to be
convicted of the crime. Id. Absent statutory authorization, a defensive theory does
not warrant a separate jury instruction. Id. at 249. Therefore, appellant’s counsel did
not fall below an objective standard of reasonableness when he failed to request an
instruction on a defense not recognized under Texas law. As such, appellant cannot
meet the first prong of the Strickland test.
            Culpable Mental State Definitions
 
            Appellant also contends trial counsel was ineffective when he failed to object
either to the trial court’s failure to limit the culpable mental state definitions in the jury
charge. We addressed this issue in our discussion of point of error two, holding that
there was no “egregious error” in the jury charge, i.e., error causing harm such that
appellant has not “had a fair and impartial trial.” See Almanza v. State, 686 S.W.2d
at 171. As such, appellant cannot show that but for but for counsel’s unprofessional
errors, the result of the proceeding would have been different. See Strickland, 466
U.S. at 687, 104 S. Ct. at 2064. Appellant, thus, fails to meet the second prong of the
Strickland test.
            Jury Argument
            Appellant contends that trial counsel was ineffective because he failed to object
to the State’s closing argument, which focused on appellant’s conduct rather than the
result of appellant’s actions. Specifically, appellant contends that the State was
erroneously permitted to argue that appellant “[i]ntentionally and knowingly
performed an act and that caused an injury and he doesn’t have to intend the injury. 
Just the act.” While we agree that this is an incorrect statement of the law in this case,
we must examine the State’s entire argument to determine whether counsel’s failure
to object met the standard for ineffective assistance set forth in Strickland.
                       He told you during the altercation I put my hand on the
chair, it blew back, it hit the window, glass broke. She sat
back down in it, she cut herself. I asked him, “Mr.
Dougherty, you mean to put your hand on that chair, the
glass broke, you saw her sit down in it. She would not have
been cut were it not for your putting you hand on the chair
and breaking the glass.”
 
                       “That’s true, ma’am. So when you go and you’re reading
your charge you don’t have a problem. You don’t have a
problem because he told you he did it. It’s done. The only
job you have to do— the only work you are going to have
to do is decide when you go back there what is he guilty of. 
Is it the third degree felony that he intentionally, knowingly
did it, or is it the sate jail felony that he did it recklessly? 
Well, I asked him, “Did you mean to put your hand on the
chair,” and he said, “Yes, ma’am.
 
                       And when you are reading your charge and then you are
reading the mental states on page 2, a person actions
intentionally or with intent with respect to the nature of his
conduct or to a result of his conduct when it is his conscious
objective—yes, I mean to put my hand on the chair—or
desire to engage in the conduct or cause the result.
 
                       I think what he told you today is I didn’t mean to cut her,
though. But did he mean to put his hand on the chair? He
said to you, yes, he did. An you set it in motion and the
glass is broken and your mother is cut.
 
                       Knowingly. A person acts knowingly or with knowledge
with respect to the nature of his conduct or to
circumstances surrounding conduct when he’s aware of the
nature of his conduct. “Mr. Dougherty, you put your hand
on that chair?” “Yes, I did.”
 
                       Start the wheel in motion. A person acts knowingly or with
knowledge with respect to a result of his conduct when he
is aware that his conduct is reasonably certain to cause a
result. This is the house he grew up in. He had a great deal
of knowledge about the chair and the window and where it
was seated in that room and that it was right up against a
pane of glass. And there was also testimony that the strings
on the chair aren’t working any more. That came from Mrs.
Dougherty. It came from the defense. But in a heated
argument I’m going to walk over in an attempt to calm my
mother and come down on the chair that sits up against a
pane of glass. He was aware that his conduct is reasonably
certain to cause the result.
 
                       That’s knowingly. You act knowingly. And I submit to
you he acted knowingly when he pushed her down in that
chair, even if we say he just pushed the chair causing that
glass to break and cutting her.
 
            While portions of the State’s argument do improperly focus on the defendant’s
conduct, rather than whether he intended the result of his conduct, the argument, when
taken as a whole, is that appellant acted “knowingly” when he pushed the chair. That
is, appellant was reasonably certain when he pushed the chair that the glass would
break and injure Mrs. Daugherty.
            In a murder case, the court of criminal appeals has held that “for knowing
murders, the distinction between result of conduct and nature of conduct blurs because
awareness of the result of the conduct necessarily entails awareness of the nature of
the conduct as well.” Medina v. State, 7 S.W.3d 633, 640 (Tex. 1999). A knowing
murder is a result-of-conduct offense which by definition is also a nature-of-conduct
offense. Id.
            The reasoning of Medina is equally applicable to this case. By arguing that
appellant acted knowingly when he pushed the chair, the State was also arguing that
appellant was reasonably certain that his conduct would result in injury to Mrs.
Dougherty.
            Therefore, appellant cannot show that but for but for counsel’s failure to object
to portions of the State’s argument, the result of the proceeding would have been
different. See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. Appellant, thus, fails
to meet the second prong of the Strickland test.
            We overrule appellant’s third point of error.  
CONCLUSION
We affirm the judgment of the trial court.
 
                                                                          Sherry Radack
                                                                          Chief Justice
 
Panel consists of Chief Justice Radack and Justices Higley and Bland.
 
Do not publish. Tex. R. App. P. 47.2(b).